## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Rebecca Castillo** an individual, | ) | **Case No.  5:17-cv-02110-KBB** |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | MAGISTRATE KATHLEEN B. |
| | ) | BURKE |
| **JO-ANN STORES, LLC**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiff, by and through Counsel, hereby submits her brief in opposition to Defendant's

Motion to Dismiss.  For the reasons set forth in the attached memorandum of law, the motion

should be denied.

Respectfully submitted,

/s/ Emily C. White
Emily White (0085662)
Marc E. Dann (0039425)
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216)373-0536
*notices@dannlaw.com*
*Counsel for Plaintiff*

1

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ……………………………………………………….. 2

TABLE OF AUTHORITIES ……………………………………….…………… 3

LAW AND ARGUMENT ……………………………………………………… 5

    A.  Defendant Operates a Place of Public Accommodation Subject to Title III of the ADA

    B.  The ADA's Clear Mandate To Remove Access Barriers Does Not Violate Due Process

    C.  Plaintiff Has Standing Under Spokeo Because She Has Encountered Access Barriers And Is Deterred From Future Visits While The Barriers Persist

    D.  Plaintiff Has Stated A Claim For Relief Under State Law

CONCLUSION ………………………………………………………………… 17

CERTIFICATE OF SERVICE………………………………………………… 17

# TABLE OF AUTHORITIES

## Cases

*Andrews v. Blick Art Materials, LLC*, No. 17-CV-767 (E.D.N.Y. 2017) …………………… 13

*Auer v. Robbins*, 519 U.S. 452, 463 (1997) ..………………………………………………… 14

*Carparts Distribution Ctr. v. Automotive Wholesalers Ass'n of New England*,
37 F.3d 12, 19 (1st Cir. 1994) …………………………………………………………….. 11

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ..………. 14

*De La Cruz,* 407 F. Supp. 2d 1126 at 1131 (C.D. Cal. 2005) ………………………………... 16

*Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS,
2017 WL 1437199 (W.D. Pa. Apr. 21,2017) ……………………………………………… 11

*Gil v. Winn-Dixie Stores, Inc.* 242 F.Supp.3d 1315 (2017) ……………………………… 10, 15

*Gomez v. Bang & Olufsen Am., Inc.*, No. 16-cv-23801, 2017
 U.S. Dist. LEXIS 15457, at *8 (S.D. Fla. Feb. 2, 2017) ………….…………………… 12

*Hobby Lobby Stores, Inc. 2017 WL 2957736, Case No. 2:17-cv-01131-JFW-SK
(June 15, 2017)* (ECF #47), at 4 n.2 …………………………………………………...…14, 15

*Lara v. Cinemark USA, Inc.,* 1998 WL 1048497, at *2 (W.D. Tex.Aug. 21, 1998),
*rev'd*, 207 F.3d 783 (5th Cir. 2000) ......................…………………………………… 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ………………………………... 15

*Morgan v. Joint Admin., Retirement Plan of the Pillsbury Co*., 268 F.3d 456, 459
(7th Cir. 2001) …………………………………………………………………………… 11

*Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 678 (2009) ……………………………………… 16

*Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 200-01 (N.D. Cal. 2006) …….. 9

*Nat'l Fed'n of Blind v. Target Corp*., 582 F. Supp. 2d 1185 (N.D. Cal. 2007) ……………. 11

*New v. Lucky Brand Dungarees Stores, Inc.*, 51 F. Supp.3d 1284 (2014) ……………….…... 10

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997) …………….... 6 ,7, 8 10

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ………………………………………… 15

3

*Stoughtenborough v. Nat'l Football League, Inc.,* No. 08-11580, 2011
U.S. Dist. LEXIS 91149 (S.D. Mich. Aug. 16, 2011) ……………………………………… 6, 7

*United States v. AMC Entm't, Inc.,* 549 F. 3d 770 (9th Cir. 2008) ……………………… 13, 14

**Statutes**

28 C.F.R. § 36.104 ……………………………………………………………………….... 7, 8

42 U.S.C. § 12101(a)(1)………………………………………………………………...… 9

42 U.S.C. § 12101(a)(3) and (5)……………………………………………………….…… 9

42 U.S.C. § 12101(b)(1)……………………………………………………………….…… 8

42 U.S.C. § 12181(7)(e)………………………………………………………………..…… 6

42 U.S.C. §12186(b)…………………………………………………………………….... 14

42 U.S.C. §12188……………………………………………………………………….... 14

42 U.S.C. §12206 ………………………………………………………………………... 14

California Unruh Civil Rights Act …………………………………………………………… 16

**Other Authorities**

H.R. Rep. 101-485 (III) at 54…………………………………………………………….... 10

H.R. Rep. 101-485 (II) at 36…………………………………………………………….…… 10

S. Rep. No. 101-116, 59 (1990) …………………………………………………………...… 10

U.S.C.C.A.N. (1990) ……………………………………………………………………9, 10

4

## LAW AND ARGUMENT

Plaintiff Rebecca Castillo ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendant Jo-Ann Stores LLC's ("Defendant") Motion to Dismiss Plaintiff's Complaint ("Complaint" or "Compl."). Defendant's motion to dismiss should be denied because Defendant maintains a place of public accommodation subject to the access mandate of Title III of the Americans with Disabilities Act, the relief she has requested does not violate due process, she has standing to maintain her claims, and she has stated a claim for relief on her supplemental state law claims.

## I.    BACKGROUND

Like most of her fellow citizens, Plaintiff Rebecca Castillo relies on the internet to shop for and purchase goods and services. (Compl.¶ 16.) Unlike most Americans, Ms. Castillo is blind, and utilizes screen reader technology to independently navigate and access information on the web. (Compl. ¶¶ 32, 35.) Readily existing technology exists to remove barriers that prevent individuals with disabilities from accessing the goods and services of places of public accommodation so that individuals with disabilities can enjoy the same degree of access as other customers. (Compl.¶ 17.) Many places of public accommodation have already taken steps to ensure that their websites are equally accessible to blind customers such as Ms. Castillo. As detailed in the Complaint, Defendant has not.

Defendant is a specialty craft retailer. (Compl. ¶ 12.) Defendant maintains a commercial website, www.joann.com, which provides consumers with access to goods and services and allows customers to browse products and product information, find store locations, and make online orders. (*Id*. ¶ 28.) Defendant programs its website to contain access barriers that prevent free and full use by blind consumers using screen reading software. (*Id*. ¶ 51.) Due to Defendant's failure and refusal to remove access barriers from www.joann.com, Plaintiff has

been denied equal access to the numerous goods, services, and benefits offered to its sighted patrons. (*Id*. ¶ 42-45.)  Due to the access barriers Plaintiff encountered on the website, she has been deterred from visiting Defendant's brick and mortar stores.  (*Id.* ¶ 43.)

## II.   DISCUSSION

Defendant argues that the case should be dismissed because it is not a place of public accommodation subject to Title III of the ADA, that the ADA violates its right to due process, that Plaintiff lacks a concrete injury in fact sufficient to establish standing, and that she fails to state a claim for relief on her supplemental state law claims.  As discussed below, each of these arguments lacks merit and the motion to dismiss should be denied.

## A.   Defendant Operates a Place of Public Accommodation Subject to Title III of the ADA

Here, there is no question that Jo-Ann Stores is a sales establishment subject to Title III of the ADA 42 U.S.C. § 12181(7)(e).   However, Defendant argues that the ADA's nondiscrimination mandate applies only in the store's brick and mortar locations, and that it has no obligation to remove access barriers on its website.  In support of this argument, Defendant relies upon two Sixth Circuit cases, *Parker* and *Stoughtenborough*, which addressed access barriers in employment benefits plans and television broadcasts respectively, and which were decided in the time before the internet played such a critical role in commerce.

The facts of this case care distinguishable from both *Parker* and *Stoutenborough*, and this Court should decline to extend the reasoning of those cases to website. The narrow interpretation of public accommodation is contrary to the plain language and the express legislative purpose of the ADA. It is also at odds with the Department of Justice's own interpretations and a growing consensus of federal courts across the country. Also, unlike the facts in the Parker and Stoutenborough cases, in this case there is a physical nexus between the access barrier and

Defendant's brick and mortar retail locations, because the barriers Plaintiff encountered included an inability to utilize the website's store locator feature.

1.      **Parker and Stoutenborough Are Factually Distinguishable And The Reasoning Should Not Be Extended To Websites**

*Parker* and *Stoughtenborough* are factually distinguishable because neither case directly addressed the applicability of Title III of the ADA to websites.  In *Parker*, an employee challenged a discriminatory insurance policy offered through the Plaintiff's employer.  The Sixth Circuit concluded that an insurance policy offered through an employer was not a good offered by a place of public accommodation.  *Parker v. Met. Life Ins. Co.*,  121 F. 3d 1006, 1010 (6th Cir. 1997).  The *Parker* court relied upon an earlier decision in *Stoughtenborough*, which rejected a suit brought by deaf football fans against the National Football League and television broadcasters challenging the NFL's television blackout rules.  *Stoughtenborough v. Nat'l Football League, Inc.*, 59 F. 3d 580 (1995).  The *Stoughtenborough* court held that a "place" of public accommodation was limited only to physical locations, relying heavily on the definition of "facility" set forth in the Title III regulations at 28 C.F.R. § 36.104.  *Stoughtenborough*, 59 F. 3d at 583. Neither case directly considered the question posed in this case of whether a website is a place of public accommodation under the ADA.

The plain language of the ADA and its supporting regulations, read in harmony with Congress's express statement of purpose, supports the applicability of the ADA to commercial websites.  In reaching its conclusion that television broadcasts were not covered by the ADA, the *Stoughtenborough* court relied heavily upon the ADA's definition sections.  In those definition sections, "place of public accommodation" is defined in pertinent part as "a facility operated by a private entity."  In turn, "facility" is defined as follows: "Facility means all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads,

walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104. Commercial websites such as www.joann.com comfortably fall within the plain language of these definitions.  In contrast to a service offered as an employee benefit such as the service at issue in *Parker*, a commercial retail website is indeed a "site."  It is also the personal property of the Defendant, it is connected to commerce, and it is a place of commerce that Defendant makes available to the public.  The Sixth Circuit's extra-textual determination that a public accommodation is limited to "physical" locations does not actually appear in the plain language of either the statute or the regulations and was made at a time where no judge could possibly anticipate the seamless integration of the then primitive internet with the day functions of commerce.  Jo-Ann's website is also physical in the sense that it exists on computer servers owned, operated, and controlled by Defendant.

**2.      Restricting The ADA To Physical Locations Is Inconsistent With The Remedial Purpose Of The ADA And Has Been Rejected By The DOJ And Most Courts.**

To conclude that Jo-Ann Stores is required to maintain accessible brick and mortar stores but not an accessible website would be an absurd result and inconsistent with the ADA's broad remedial purpose.  The narrow reading proposed by Defendant has been consistently rejected by the Department of Justice and other courts.

In 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  When it passed the Americans with Disabilities Act, Congress specifically found that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded

8

from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination."  42 U.S.C. § 12101(a)(1).

In passing the ADA, Congress recognized that people with disabilities had experienced a long history of discrimination in securing equal access to public accommodations:

> [D]iscrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;"

> . . . individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

42 U.S.C. § 12101(a)(3) and (5).

The express purpose and goal of the ADA is to eliminate discrimination and to ensure equal opportunity, full participation and economic self-sufficiency by people with disabilities:

> [T]he Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and . . the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."

42 U.S.C. § 12101(a)(7) and (8).

Congress unequivocally intended that the ADA's broad mandate for providing access to public accommodations apply to emerging technologies like websites. "[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times." *Id*. at 108, reprinted in 1990 U.S.C.C.A.N. at 391 (cited in *Nat'l Fed'n of the Blind v. Target Corp.*,

452 F. Supp. 2d 946, 200-01 (N.D. Cal. 2006).)   The legislative history of the definition of "public accommodation" shows that Congress wanted the list of 12 exemplars in the definition to be "construed liberally" in harmony with the ADA's broad remedial purpose of ensuring that people with disabilities can enjoy equal access to places of public accommodation. S. Rep. No. 101-116, 59 (1990) ("[W]ithin each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase 'other similar' entities. The Committee intends that the 'other similar' terminology should be construed liberally consistent with the intent of the legislation . . . ."); see also H.R. Rep. 101-485 (III) at 54, reprinted in 1990 U.S.C.C.A.N. at 477 (same). The law's breadth is evident in Congress's agreement with the Attorney General's view that the definition "must bring Americans with disabilities into the mainstream of society 'in other words, full participation in and access to all aspects of society.'" H.R. Rep. 101-485 (II) at 36, reprinted in 1990 U.S.C.C.A.N. at 317 (internal citation omitted).

The Department of Justice has consistently taken the position that websites are places of public accommodation subject to Title III of the ADA, and courts have given deference to this interpretation.   "[T]he Department has long considered websites to be covered by title III despite the fact that there are no specific technical requirements for websites currently in the regulations or ADA standards[.]"  Statement of Interest of the United States, *New v. Lucky Brand Dungarees Stores, Inc.*, 51 F. Supp.3d 1284 (2014), at 7 (S.D. Fla.) (Apr. 10, 2014); Consent Decree, *Nat'l Fed. of the Blind, et al.,* 452 F. Supp. 2d 946 (N.D. Cal. 2006), *United States of America v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO, ¶ 3 (D. Mass) (entered Mar. 25, 2014). *See also* Statement of Interest of the United States, *Juan Carlos Gil v. Winn-Dixie Stores, Inc.*, Civil Action No. 16-23020 (S.D. Fla.) (ECF #23) at 5 ("[T]he goods and services of a public accommodation provided via website are covered by the ADA.")

Many other courts have rejected or declined to extend the reasoning of *Parker* and *Stoutenborough*. The Seventh Circuit has declined to limit "place of public accommodation" to physical locations. *Morgan v. Joint Admin., Retirement Plan of the Pillsbury Co*., 268 F.3d 456, 459 (7th Cir. 2001) ("The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public."). Likewise, the First Circuit has also rejected any limitation of Title III solely to physical locations. *Carparts Distribution Ctr. v. Automotive Wholesalers Ass'n of New England*, 37 F.3d 12, 19 (1st Cir. 1994) ("It would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not. Congress could not have intended such an absurd result."). Courts in the Ninth District have taken a middle ground approach, holding a website is a place of public accommodation so long as there is a nexus between the access barrier and a physical location. *Nat'l Fed'n of Blind v. Target Corp*., 582 F. Supp. 2d 1185 (N.D. Cal. 2007). A federal trial court in Pennsylvania recently reached a similar conclusion. *See Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS, 2017 WL 1437199 (W.D. Pa. Apr. 21, 2017) at *15 (rejecting argument that public accommodations only include physical locations and applying physical nexus standard in holding that a website is a place of public accommodation).

**3.    There is a Physical Nexus Between the Website and Defendant's Brick and Mortar Stores**

Even if this Court were to conclude that the ADA only applies to physical, brick and mortar locations, here there is a clear nexus between the barriers Plaintiff encountered on the website and the stores' physical location. One of the barriers that Plaintiff encountered on the website was an inaccessible store locator feature. Due to the inaccessibility of that feature,

Plaintiff was deterred from locating and visiting a physical store. Additionally, due to access barriers on the website, Defendant failed to effectively communicate information about products and goods offered for sale in physical locations. Finally, due to the access barriers Plaintiff encountered, she was unable to make purchases to have products shipped from physical locations to her home.

Defendant's reference to *Gomez v. Bang & Olufsen Am., Inc.*, No. 16-cv-23801, 2017 U.S. Dist. LEXIS 15457, at \*8 (S.D. Fla. Feb. 2, 2017) is therefore inapposite because it was premised on unusual allegations that plaintiff did not intend to visit the defendant's store, which Plaintiff alleges in the Complaint. Jo-Ann Stores has further supplied no evidence to put this in the purview of the *Bang* case, which is defendant's burden to prove. Plaintiff has alleged there is a connection between the website and Jo-Ann Stores' physical locations and thus a nexus, which is enough at this stage. However, if the Court finds that a violation of Plaintiff's right under the ADA requires more specific pleading, Plaintiff respectfully requests the opportunity to amend her complaint.

**B.** **The ADA's Clear Mandate To Remove Access Barriers Does Not Violate Due Process**

Defendant further argues that it has no obligation to eliminate accessibility barriers unless and until the DOJ issues detailed regulatory guidance mandating a particular standard of compliance. However, as discussed below, since the ADA was passed in 1990, places of public accommodation have been on notice of the statutory obligation to ensure people with disabilities enjoy equal access to goods and services.

The ADA's statutory obligation is clear and enforceable, and due process does not require detailed guidelines for how such access is to be achieved. In fact, plain language of ADA explicitly

12

states that the lack of specific technical assistance guidance from the DOJ does not excuse a place of public accommodation from its non-discrimination obligations.  42 U.S.C. § 12206(e) ("Failure to receive assistance - An employer, public accommodation, or other entity covered under this chapter shall not be excused from compliance with the requirements of this chapter because of any failure to receive technical assistance under this section, including any failure in the development or dissemination of any technical assistance manual authorized by this section.")

In considering and rejecting a similar argument in *Andrews v. Blick*, Judge Weinstein made the following observations:

> The defendant's principal complaint appears to be that it wants there to be black-and white rules for ADA compliance, and here, there may be shades of gray. But the antidiscrimination provisions the defendant is accused of violating are not simple checklists of clearcut rules—they are standards that are meant to be applied contextually and flexibly. The 'gray' the defendant complains of is a feature of the Act.

*Andrews v. Blick Art Materials, LLC*, No. 17-CV-767 (E.D.N.Y. 2017).

As the foundation for its due process claim, Defendant cites *United States v. AMC Entm't, Inc.*, 549 F. 3d 760 (9th Cir. 2008).  At issue in that case was ambiguity between the meaning of "lines of sight," which resulted in conflicting positions between district courts in different circuits. The DOJ eventually took a position in the form of an amicus brief in *Lara v. Cinemark USA, Inc.* after district courts had taken respective positions. *Lara v. Cinemark USA, Inc.*, 1998 WL 1048497, at *2 (W.D. Tex.Aug. 21, 1998), *rev'd*, 207 F.3d 783 (5th Cir. 2000).  The DOJ then brought a lawsuit against AMC arguing AMC was required to *retrofit theaters, including those built before the DOJ's amicus brief* in *Lara*, which the Ninth Circuit reversed on due process grounds. *AMC Entm't, Inc.*, 549 F. 3d. at 770. The *AMC* court found that as little as the filing of an amicus brief in separate litigation by the DOJ could provide adequate prospective notice of prohibited conduct.  *Id*. at 770.  The court also observed that, "[d]ue process requires that the

13

government provide citizens and other actors with sufficient notice as to what behavior complies with the law." *Id*. at 768.  Not at issue were the theatres built *after* the *Lara* amicus brief.

The distinction between *AMC* and Jo-Ann Stores is that AMC did not have notice to satisfy due process for theaters built *before* the amicus brief, while Jo-Ann Stores has had notice of the ADA's basic mandate that commercial websites must be accessible to the disabled, since as early as 1996.  More recently, Judge Walter in *Hobby Lobby Stores, Inc.*, in a similar web access case observed that "Congress delegated authority to promulgate regulations to implement Title III to the DOJ. 42 U.S.C. §12186(b). The DOJ also has authority to issue technical assistance for compliance with the ADA and to seek enforcement of its regulations in federal court. *See* 42 U.S.C. §§ 12186(b), 12188(b), 12206. *Accordingly, the DOJ's interpretations of the ADA are entitled to substantial deference.*"  2017 WL 2957736, Case No. 2:17-cv-01131-JFW-SK (June 15, 2017) (ECF #47), at 4 n.2 (citing *Auer v. Robbins*, 519 U.S. 452, 463 (1997); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)) (emphasis added).  The *Hobby Lobby* court also addressed this same *AMC* argument Jo-Ann Stores advocates here:

> Defendant's argument that *AMC* requires the Court dismiss this case is unpersuasive because *AMC* is factually and procedurally distinguishable. The court in *AMC* was reviewing whether a district court's comprehensive remedial plan was appropriate, after the DOJ had prevailed on its motion for summary judgment. Id. at 762. The Court concludes the breadth and depth of analysis required at that stage of the proceedings is far different than the scope of review in this case because the Court cannot consider or weigh evidence at the motion to dismiss stage. *E.g., Target*, 452 F. Supp. 2d at 965. In addition, in *AMC*, the DOJ had promulgated specific regulations that required theater owners to provide wheelchair bound patrons in facilities with stadium seating with "lines of sight comparable to those for members of the public" and those regulations were ambiguous. 549 F.3d at 763. However, in this case, the DOJ's general website accessibility requirement is not ambiguous because the DOJ has not imposed any specific means by which entities must meet this requirement and facilities such as Hobby Lobby are free to decide how to comply with the ADA.

*Hobby Lobby* Order at 7. Other courts have reached the same conclusion.  *See e.g. Gil v. Winn-Dixie Stores, Inc.*, No. CV 16-23020-CIV, 2017 WL 2547242, at *9 (S.D. Fla. June 12, 2017) (trial court decision finding inaccessible website violates the ADA following trial).

Companies like Jo-Ann Stores that operate websites or mobile apps for the public are free to decide how to comply with the ADA since the DOJ has not imposed any specific guidance as to what minimum standards of compliance are required (and indeed, such standards may vary depending on the good or service offered, and the resources of a particular public accommodation). But just because there is flexibility in figuring out how to comply with the statute, does not mean that compliance is not mandated in the first instance.  Accordingly, for due process purposes, the notice is whether Defendant knew it had to comply with the ADA and not whether it knows how it must comply with the ADA.

**C.     Plaintiff Has Standing Under *Spokeo* Because She Has Encountered Access Barriers And Is Deterred From Future Visits While The Barriers Persist**

Plaintiff has experienced and pled an injury-in-fact that is caused by Defendant's conduct and is redressible by the Court. To establish standing, it is well settled that a party must demonstrate an injury in fact, a causal connection between that injury and the defendant's action, and that the injury is redressible. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Supreme Court recently reaffirmed in *Spokeo* that an injury in fact must be "concrete." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

In disability discrimination case, a person with a disability has experienced an "injury in fact" when she has encountered an access barrier in violation of the law.  *Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 947 (9th Cir. 2011).  An access barrier does not need to result in the complete inaccessibility of the place of public accommodation, but rather must interfere with the full and equal enjoyment of the facility.  *Id.*

Here, Plaintiff is a person with a disability who has encountered access barriers on Defendant's retail website that have prevented her from fully and equally enjoying the goods and services offered both on the website and at Defendant's physical store locations.  This is sufficient to confer standing on Plaintiff to challenge the access barriers and seek injunctive relief and statutory damages under her supplemental state law claims.

**D.**     **Plaintiff Has Stated A Claim For Relief Under State Law**

It is well settled that a violation of Title III of the ADA is also a violation of California's state anti-discrimination law, the Unruh Act. Contrary to Defendant's arguments, Plaintiff need not allege intentional discrimination to state a claim under Unruh Act claim.

The intentional discrimination standard on which Defendant relies only applies if the Unruh Act claim is not premised on an ADA violation.  *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 678 (2009) (holding that a plaintiff need not prove intentional discrimination to recover for an ADA violation under the Unruh Act).  The Unruh Act provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 [] shall also constitute a violation of this section." Cal Civ. Code § 51(f). (emphasis added). Plaintiff's Unruh Act claims specifically premised on the violation of rights under the ADA. (See Compl. ¶¶ 93, 101) ("Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*") But even if a potential ADA claim on which Plaintiff's Unruh Act is premised later becomes moot, the Unruh Act remedy for damages still survives. *See v. De La Cruz,* 407 F. Supp. 2d 1126 at 1131 (C.D. Cal. 2005).  Plaintiff also pled that "Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability … because Defendant has constructed a website [and mobile app] that are inaccessible to Plaintiff, Defendant maintains the website in an inaccessible form, and Defendant has failed to take actions to correct these barriers."  (*See* Compl. ¶ 92.)

16

**IV.     CONCLUSION**

Defendant's motion to dismiss should be denied, because Defendant maintains a place of public accommodation subject to the access mandate of the ADA, Plaintiff has standing, the relief she has requested does not violate due process and she has stated a claim for relief on her supplemental state law claims.

*Respectfully submitted,*

*/s/ Emily White*
Emily White (0085662)
Marc E. Dann (0039425)
DannLaw
P.O. Box 6031040
Cleveland OH 44103
216-373-0539
216-373-0536 Fax
DisabilityNotices@dannlaw.com
*Counsel of Record for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of January, 2018, a copy of the foregoing *Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Emily White
Emily White (0085662)

**CERTIFICATION**

I hereby certify that this brief complies with the page limitations set forth in U.S. District Court Northern District Local Rule 7.1(F).  This case is assigned to the standard track.

/s/ Emily White
Emily White (0085662)

17