## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA CASTILLO, | : | CASE NO. 5:17-cv-2110 |
| | : | |
| Plaintiff, | : | |
| v. | : | MAGISTRATE JUDGE BURKE |
| | : | |
| JO-ANN STORES, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### DEFENDANT JO-ANN STORES, LLC'S REPLY MEMORANDUM
### IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) and Local Rule 7.1(e), Defendant, Jo-Ann

Stores, LLC ("Defendant", "Jo-Ann" or "Jo-Ann Stores"), hereby submits this Reply

Memorandum in Support of its Motion to Dismiss the Plaintiff's Complaint in its entirety.

Respectfully submitted,

*s/ Stephen W. Funk, Esq.*
Stephen W. Funk (0058506)
ROETZEL & ANDRESS
222 South Main Street, Suite 400
Akron, Ohio 44114
Telephone: (330) 849-6602
Facsimile: (330) 376-4577
Email: sfunk@ralaw.com

*s/ Joseph J. Lynett*
Joseph J. Lynett (Admitted *Pro Hac Vice*)
JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
Telephone:: (914) 872-6888
Facsimile: (914) 946-1216
Email:  Joseph.Lynett@jacksonlewis.com

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

REPLY TO PLAINTIFF'S ARGUMENTS........................................................................ 1

I.  PLAINTIFF'S OPPOSITION BRIEF DOES NOT ESTABLISH THAT
    DEFENDANT'S WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION.............. 1

    A.  Title III Does Not Apply to Websites Under Controlling Authority in
        This Circuit ................................................................................................ 1

    B.  The Sixth Circuit Has Not Adopted The "Nexus" Approach Suggested
        By Plaintiff And Even If It Did, There Is No Nexus Between the
        Website and a Physical Structure.............................................................. 4

II. PLAINTIFF'S OPPOSITION BRIEF MISSTATES DEFENDANT'S
    POSITION ESTABLISHING THE DUE PROCESS VIOLATION AND
    SHOULD BE DISREGARDED ...................................................................... 7

III. PLAINTIFF'S CLAIM THAT JO-ANN VIOLATED TITLE III BY NOT
    PROVIDING AUXILIARY AIDS AND SERVICES SHOULD BE
    DISMISSED AS A MATTER OF LAW .......................................................... 12

IV. PLAINTIFF FAILS TO REBUT DEFENDANT'S ARGUMENT THAT SHE
    LACKS STANDING AS SHE DID NOT SUFFER AN INJURY IN FACT .................. 14

V.  PLAINTIFF HAS FAILED TO OVERCOME DEFENDANT'S ARGUMENT
    THAT THE CALIFORNIA STATE UNRUH CLAIM SHOULD BE
    DISMISSED ............................................................................................. 15

CONCLUSION................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argemyi v. Creighton Univ.*,
    703 F.3d 441 (8th Cir. 2013) ................................................12

*Godbey v. Iredell Mem'l Hosp., Inc.*,
    No. 5:12-cv-00004-RLV-DSC, 2013 U.S. Dist. LEXIS 117129 (W.D.N.C.
    Aug. 19, 2013) ................................................12

*Gomez v. Bang & Olufsen Am., Inc.*,
    No. 1:16-cv-23801, 2017 U.S. Dist. LEXIS 15457 (S.D. Fla. Feb. 2, 2017) ......................4, 5

*Gorecki v. Hobby Lobby Stores, Inc.*,
    No. CV 17-1131-JFW(SKx), 2017 U.S. Dist. LEXIS 109123 (C.D. Cal. June
    15, 2017) ................................................10

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................9

*Nat'l Fed'n of the Blind v. Target Corp.*,
    452 F. Supp. 2d 946 (N.D. Cal 2006) ................................................5

*Parker v. Metro. Life Ins. Co.*,
    121 F.3d 1006 (6th Cir. 1997) ................................................2, 3, 7

*Perez v. Ohio Bell Tel. Co.*,
    655 Fed. App'x 404, 411 (6th Cir. 2016) ................................................8

*Robles v. Domino's Pizza LLC*,
    No. 16-06599, 2017 U.S. Dist. LEXIS 53133 (C.D. Cal. Mar. 20, 2017) ......................10, 11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................15

*Stoutenborough v. National Football League, Inc.*,
    59 F.3d 580 (6th Cir. 1995) ................................................1, 2

*Tauscher v. Phoenix Bd. of Realtors, Inc.*,
    No. CV-15-00125-PHX-SPL, 2017 U.S. Dist. LEXIS 161940 (D. Ariz. Sept.
    29, 2017) ................................................12

*United States v. AMC Entm't, Inc.*,
    549 F.3d 760 (9th Cir. 2008) ................................................9, 10, 11, 12

*United States v. Harcourt Bracer Legal & Prof'l Publ'n, Inc.*,
No. 94CV3295, 1994 U.S. Dist. LEXIS 22007 (N.D. Ill. June 24, 1994) .............................13

*Weyer v. Twentieth Century Fox Film Corp.*,
198 F.3d 1104 (9th Cir. 2000) ...........................................................................................5

**Statutes**

ADA Title III ....................................................................................................................2, 5, 7, 9

**Other Authorities**

28 C.F.R. § 36.104 ...............................................................................................................2

28 C.F.R. § 36.303 ...........................................................................................................8, 11

ADA Best Practices Tool Kit For State And Local Governments: General
Effective Communication Requirements Under Title II of the ADA, Ch. A(1),
https://www.ada.gov/pcatoolkit/chap3toolkit.htm................................................14

Dep't of Justice: Americans with Disabilities Act ADA Title III Technical
Assistance Manual, § III-4.3100, https://www.ada.gov/taman3.html ......................13

Fed. R. Civ. P. 65(d) ...........................................................................................................8

Letter from Deval L. Patrick, Assistant Att'y Gen., Civil Rights Div., to Tom
Harkin, Sen., U.S. Senate (Sept. 9, 1996)
https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/tal712.txt ..........3

Statement of Interest of the United States of America, *Nat'l Ass'n of the Deaf v.
Harvard Univ.*, No. 3:15-cv-30023-MGM, 2016 U.S. Dist. LEXIS 120121 (D.
Mass. Feb. 9, 2016) ...........................................................................................7

Statement of Interest of the United States of America, *Nat'l Ass'n of the Deaf v.
Mass. Institute of Tech.*, No. 3:15-cv-30024-MGM, 2016 U.S. Dist. LEXIS
91080 (D. Mass. Feb. 9, 2016) ...........................................................................7

## INTRODUCTION

Defendant, Jo-Ann Stores, LLC ("Defendant", "Jo-Ann" or "Jo-Ann Stores"), respectfully submits this Reply Memorandum in support of its Motion to Dismiss Plaintiff's Complaint in its entirety.  As described in detail below, Plaintiff's Opposition has failed to rebut any one of the several bases that Defendant established in its moving papers for dismissing the Complaint as a matter of law and, if anything, bolsters many of Defendant's arguments. Accordingly, the Court should grant Defendant's Motion to Dismiss.

## REPLY TO PLAINTIFF'S ARGUMENTS

I.    **PLAINTIFF'S OPPOSITION BRIEF DOES NOT ESTABLISH THAT DEFENDANT'S WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION.**

A.    **Title III Does Not Apply to Websites Under Controlling Authority in This Circuit.**

Defendant's Motion to Dismiss established that controlling authority from the Sixth Circuit in *Stoutenborough* and *Parker* sitting *en banc* doom Plaintiff's Title III claim.  Plaintiff argues that the Court should ignore controlling precedent since these cases are "factually distinguishable" because the instant case involves a website.  Pl.'s Br. in Opp'n 7, ECF No. 11. Plaintiff is wrong.  The case is factually indistinguishable from *Stoutenborough* and *Parker*.  The instant case, *Stoutenborough* and *Parker* all involve attempts by plaintiffs to apply Title III to non-physical *fora*.  This is the relevant controlling factually similarity that Plaintiff ignores. Accordingly, the result in those cases should follow here resulting in the dismissal of Plaintiff's lawsuit.

As is evident by 42 U.S.C. § 12187(7), a public accommodation is a physical place and the Sixth Circuit has previously so held.  *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580 (6th Cir.), *cert. denied*, 516 U.S. 1028, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995), held that "the prohibitions of Title III are restricted to 'places' of public accommodation."  *Id.* at 583.

A "place," as defined by the applicable regulations, is "'a facility, operated by a private entity, whose operations affect commerce and fall within at least one of the' twelve 'public accommodation' categories."  *Id.* (quoting 28 C.F.R. § 36.104).  "'Facility,' in turn, is defined as 'all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located.'"  *Id.* Although the court in *Stoutenborough* acknowledged that the football games were played in a place of accommodation and that the television broadcasts were a service provided by the defendants, the court concluded that the broadcasts themselves "do[ ] not involve a 'place of public accommodation.'"  *Id.*  Accordingly, *Stoutenborough* held that the service offered by the defendants did not involve a place of public accommodation.  *Id.*  Finally, the court noted that "plaintiffs' argument that the prohibitions of Title III are not solely limited to 'places' of public accommodation contravenes the plain language of the statute."  *Id.*

Applying Stoutenborough in a vastly different factual situation involving access to equal benefits, the Sixth Circuit sitting *en banc*, again held Title III applies only to physical places of public accommodation.   Significantly, the Sixth Circuit in *Parker* made clear that since plaintiff, like the Plaintiff in *Stoutenborough*, was not seeking to use the goods or services at a physical place of public accommodation that Title III did not apply based on the plain language of the statute.  *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997).  The service that Plaintiff seeks here is access to www.joann.com.  Like the insurance office in *Parker*, the public cannot enter Jo-Ann stores' Website to obtain that service.  That service, similar to the broadcast in *Stoutenborough*, is obtained through the internet on Plaintiff's personal device to access the internet and other telecommunications.

2

In addition, Plaintiff's contention that neither *Parker* nor *Stoutenborough* "directly considered the question posed in this case of whether a website is a place of public accommodation under the ADA" is misleading at best because Chief Judge Martin in his dissent in *Parker* expressly references that the majority's holding means that the Internet is not covered under Title III.  *Parker*, 121 F.3d at 1020 (Martin, C.J., dissenting).  Thus, the Sixth Circuit sitting *en banc* in *Parker*, a case that Plaintiff argues should be disregarded by the Court, held that Title III only applies to physical structures and not to "telephone order[s], through the mail, via the Internet, and other communications media," even though the court was aware that the Internet had already changed the face of American life and commerce.  *See id*.  Accordingly, it is clear that *Stoutenborough* and *Parker* are controlling authority requiring dismissal of Plaintiff's lawsuit.

Plaintiff argues that restricting the ADA to physical locations is inconsistent with its remedial purpose and "has been rejected by the DOJ and most courts."  Pl.'s Br. in Opp'n 8.  Plaintiff relies heavily upon the express language of the ADA and guidance issued by the Department of Justice ("DOJ") in an effort to convince this Court to disregard the controlling authority from the Sixth Circuit.  Plaintiff fails to acknowledge, however, *Parker* was decided after the DOJ first publicly stated its position on this issue in 1996 in a letter from Assistant Attorney General Deval Patrick responding to an inquiry by Senator Tom Harkin regarding the accessibility of websites to individuals with visual disabilities. *See* Letter from Deval L. Patrick, Assistant Att'y Gen., Civil Rights Div., to Tom Harkin, Sen., U.S. Senate (Sept. 9, 1996), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/tal712.txt (last visited January 12, 2018).  Indeed, the *Parker* court had the benefit of considering the ADA, its legislative history, and DOJ guidance, when concluding that a place of public accommodation under Title

III is limited to a *physical place*.  The fact remains that while Congress may "amend the ADA to define a website as a place of public accommodation," it has not yet done so (despite having amended the ADA since its passage in 1990). *Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-cv-23801, 2017 U.S. Dist. LEXIS 15457, at *4 n.3 (S.D. Fla. Feb. 2, 2017).  By contrast, courts, having no legislative power, "cannot create law where none exists."  *Id*.  Finally, Plaintiff argues that Stoutenborough and Parker should be disregarded as controlling authority because those cases did not involve the issue of whether websites are covered under Title III.  While it is true that these cases did not address the websites explicitly, the holding in *Stoutenborough* – that Title III only applies to a physical place of public accommodation – was later applied in *Parker* in a vastly different factual situation involving access to equal benefits.  There is no indication that the holdings in *Stoutenborough* and *Parker* are limited to the specific factual situations of those cases.  Indeed, the vastly different factual situations in those cases, lead to the precisely the opposite conclusion – that the holdings in those cases are not limited to their facts, but apply, as here, to bar Title III lawsuits seeking to apply the law to the Internet.  Despite Plaintiff's arguments to the contrary, *Stoutenborough* and *Parker* are controlling authority that should result in the dismissal of her lawsuit.

> **B.**     **The Sixth Circuit Has Not Adopted The "Nexus" Approach Suggested By Plaintiff And Even If It Did, There Is No Nexus Between the Website and a Physical Structure.**

Plaintiff argues that even if Title III only applies to physical, brick and mortar locations . . . there is a nexus between the barriers Plaintiff encountered on the website and Jo-Ann's physical stores.  Pl.'s Br. in Opp'n 11, ECF No. 11.  *Parker* and *Stoutenborough* are clear that Title III applies to only to physical places of public accommodation and does not extend to non-

physical *fora*, such as the internet.  Therefore, controlling Sixth Circuit authority does not follow the nexus approach to finding website coverage under Title III.

However, even if Sixth Circuit authority did not preclude such an analysis, Plaintiff does not allege a sufficient nexus between www.joann.com and Jo-Ann's stores.  Indeed, Plaintiff's own allegations assert that www.joann.com is itself a place of public accommodation.  *See* Compl. ¶57, ECF No. 1.  Further, the service to which Plaintiff seeks – www.joann.com – is not available at Jo-Ann stores, nor can Plaintiff allege that this service is available at its stores.

Plaintiff relies on Ninth Circuit law to support her argument.  The Ninth Circuit has adopted the nexus approach to determine whether websites are covered under Title III.  *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (requiring "some connection between the good or service complained of and an actual physical place."); *see Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006).  As noted above, the Sixth Circuit does not apply the nexus analysis and, in any event, Ninth Circuit law does not support Plaintiff's argument.  Plaintiff attempts to satisfy the "nexus" requirement in her opposition by alleging that: (1) Defendant's Website contained "an inaccessible store locator feature" which deterred Plaintiff "from locating and visiting a physical store"; (2) "Defendant failed to effectively communicate information about products and good offered for sale in physical locations"; and (3) "[D]ue to the access barriers Plaintiff encountered, she was unable to make purchases to have products shipped from physical locations to her home." Pl.'s Br. in Opp'n 12, ECF 11.  Plaintiff falls short, however, as courts applying the nexus approach have held that Title III claims based on inaccessible websites must allege that it was **necessary** to use the defendant's website in order to enjoy the goods and services offered at the defendant's physical locations.  *See Target Corp.*, 452 F. Supp. 2d at 955-56 (N.D. Cal. 2006) (holding that

"to the extent that Target.com offers information and services unconnected to Target stores, which do not affect the enjoyment of goods and services offered **in Target stores**, the plaintiffs fail to state a claim under Title III of the ADA."); *Gomez*, 2017 U.S. Dist. LEXIS 15457, at \*2 ("Because Plaintiff has not alleged that Defendant's website impeded his personal use of [Defendant's] retail locations, his ADA claim must be dismissed.").

Here, Plaintiff does not allege that it was necessary to use www.joann.com in order to enjoy the goods and services offered at Defendant's stores. Rather, Plaintiff's is merely citing to alleged accessibility issues on website. Neither the Complaint, nor Plaintiff's opposition, alleges that the website impeded or prevented Plaintiff from enjoying all the goods and services at a Jo-Ann retail location—a physical place of public accommodation.

Tellingly, Plaintiff argues that this Court should apply the nexus approach adopted by the Ninth Circuit, a jurisdiction where Plaintiff resides and where all the alleged events giving rise to her Complaint occurred. This begs the question, if Plaintiff pled a sufficient nexus between the website and the Jo-Ann's stores why did she not file her Complaint in California where the law purportedly supports a finding of Title III coverage based on a nexus between the Website and a physical place of public accommodation? The answer is obvious. Plaintiff has not pled such a nexus as required by the Ninth Circuit. The allegations demonstrate at most that Plaintiff was only seeking information from the Website and was not denied all the goods and services at Jo-Ann stores. The only evident reason Plaintiff even filed suit in this District is to forum-shop (or to put it otherwise to avoid case law in California which would doom all of her claims).

Because Plaintiff has not so alleged that she was denied access to enjoy all the goods and services to any of Defendant's retail locations open to the public, even if *Stoutenborough* and *Parker* did not otherwise mandate dismissal of her Title III claim (which it does), the Complaint

must be dismissed because the Website is not alleged to have prevented Plaintiff from full and equal enjoyment of the goods and services at Defendant's stores.

## II. PLAINTIFF'S OPPOSITION BRIEF MISSTATES DEFENDANT'S POSITION ESTABLISHING THE DUE PROCESS VIOLATION AND SHOULD BE DISREGARDED.

Defendant's Motion to Dismiss established that holding Jo-Ann liable under Title III violates due process because there is no accessibility standard promulgated by the DOJ. Plaintiff's Opposition misstates Defendant's position by asserting that Defendant's due process claim is premised on requiring detailed guidance by the DOJ concerning how to comply with accessibility requirements under Title III argument. While under *Stoutenborough* and *Parker* www.joann.com is not covered under Title III, even if this controlling authority did not foreclose Plaintiff's lawsuit here, Plaintiff's theory of liability under Title III is that there is an affirmative legal requirement to make web content accessible in the absence of a request for auxiliary aids and service. *See* Compl., Count 1, ¶¶58, 59, 61-65, ECF No. 1. Imposing liability under Title III based on this legal theory violates due process as explained below.

Missing from Plaintiff's opposition is any argument or authority supporting its legal theory that Title III imposes an affirmative requirement on Jo-Ann to make www.joann.com accessible to Plaintiff in the absence of a request for auxiliary aids and services. This is not surprising because the DOJ has not interpreted Title III to place such an affirmative obligation on covered entities. The only arguable notice given by DOJ concerning the legal requirement under Title III to make website content accessible is the statutory and regulatory requirement to provide auxiliary aids and services. *See* Statement of Interest of the United States of America, *Nat'l Ass'n of the Deaf v. Mass. Institute of Tech.*, No. 3:15-cv-30024-MGM, 2016 U.S. Dist. LEXIS 91080 (D. Mass. Feb. 9, 2016) ("MIT Statement of Interest"); Statement of Interest of the United

States of America, *Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 3:15-cv-30023-MGM, 2016 U.S. Dist. LEXIS 120121 (D. Mass. Feb. 9, 2016) ("Harvard Statement of Interest"); *see also* 42 U.S.C §12182(b)(2)(A)(iii); 28 C.F.R. §36.303.  As pointed out above, Plaintiff's Title III claim goes much further in imposing Title III accessibility obligations than the DOJ has given notice of in its Harvard Statement of Interest and MIT Statement of Interest.  Because Plaintiff's Title III claim crosses the line seeking to impose liability beyond the existing statutory requirement to provide auxiliary aids and services, this violates Jo-Ann's due process rights.

By seeking declaratory and injunctive relief to make the website accessible, wholly separate from the statutory obligation to provide auxiliary aids and services, Plaintiff's request for injunctive relief necessarily means that the Court must impose a specific accessibility standard, despite Plaintiff's assertions that she is not seeking any specific standard.  An injunction cannot simply order a defendant to obey the law.  *See Perez v. Ohio Bell Tel. Co.*, 655 Fed. App'x 404, 411 (6th Cir. 2016).  Pursuant to Fed. R. Civ. P. 65(d), an injunction must specify the particular action the defendant must do or refrain from doing, and overbroad language that merely requires the defendant to obey the law must be stricken. *See Perez*, 655 Fed. App'x at 411.  Accordingly, in order to comply with the constitutional requirements of Fed. R. Civ. P. 65(d) the Court must order a specific accessibility standard and cannot merely order Jo-Ann to make the website accessible.  This violates Jo-Ann's due process rights given the DOJ's prior lack of notice of such an affirmative accessibility requirement under Title III.

The DOJ also has not notified covered entities of such an affirmative legal requirement, in the absence, as in this case, of a request for auxiliary aids and services.  The DOJ has taken the position in the past that (1) websites are covered under Title III and (2) that covered entities are

required under Title III to provide auxiliary aids and services to make websites accessible.[1] *See* MIT Statement of Interest; Harvard Statement of Interest. However, the DOJ has never notified covered entities of the sweeping legal requirement Plaintiff seeks to establish here – that there exists an affirmative legal requirement to make a website accessible in the absence of a request for auxiliary aids and services, similar to the legal requirement to construct, alter or conduct readily achievable barrier removal at a facility so that it is accessible to a disabled individual. *See* 42 U.S.C. § 12182(b)(2)(A)(iv) (providing an affirmative requirement to remove structural barriers); 42 U.S.C. § 12183(a)(1) (providing an affirmative requirement to design and construct new facilities to be accessible to disabled individuals in accordance with design standards set forth in the Title III regulations); 42 U.S.C. § 12183(a)(2) (providing an affirmative requirement to when altering existing facilities to be accessible to individuals with disabilities). The basis of Jo-Ann's due process argument is that, like the defendant in *AMC*, the DOJ has provided notice of such an affirmative accessibility requirement or accessibility standard that applies to such an affirmative requirement, and therefore to impose liability violates fundamental principles of due process. Plaintiff's Brief in Opposition ignores this argument. "Due process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law." *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008). "Liberty depends on no less: '[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *Id*. (quoting *Grayned v. City of*

---

[1] On December 26, 2017, the DOJ officially withdrew its 2010 ANPRM concerning website accessibility requirements under Title III. The DOJ specifically notified the public that the 2010 ANPRM "had no force or effect of law, and no party should rely on them as presenting the [DOJ's) position on these issues." Accordingly, website accessibility requirements under Title III are in an even more uncertain legal position from which to hold JoAnn liable than when Plaintiff filed her Complaint.

*Rockford*, 408 U.S. 104, 108 (1972)).  "Put more colloquially, those regulated by an administrative agency are entitled to know the rules by which the game will be played."  *Id.* (internal quotation marks omitted).

In addition to misstating Jo-Ann's position concerning the due process violation, Plaintiff erroneously distinguishes *AMC*, 549 F.3d at 768, by arguing that that unlike the defendant in *AMC*, Jo-Ann has had notice for years about the legal obligation to make its website accessible. *AMC* is squarely on point because Jo-Ann, as established above, has no notice of an affirmative obligation to make the website accessible in the absence of a request for auxiliary aids and services – which is Plaintiff's only possible theory of liability since there is no allegation that Plaintiff ever requested Jo-Ann to provide auxiliary aids and services to make the website accessible.  In our initial brief supporting the motion to dismiss based on a due process violation, Defendant cited to the Ninth Circuit's decision in *AMC*.  In *Robles v. Domino's Pizza LLC,* No. 16-06599, 2017 U.S. Dist. LEXIS 53133, at *17 (C.D. Cal. Mar. 20, 2017) the Court applied *AMC* to reach the conclusion that defendant's due process rights would be violated if they were forced to bring their website into compliance with the WCAG 2.0 Guidelines "without specifying a particular level of success criteria and without the DOJ offering meaningful guidance on this topic."  *Id.*  Plaintiff attempts to distinguish *AMC* from this case by arguing that unlike the Defendant *AMC*, Defendant "had notice of the ADA's basic mandate that commercial websites must be accessible to the disabled."  Pl.'s Br. in Opp'n 14, ECF No. 11.  Plaintiff's attempt to distinguish *AMC* by relying upon *Gorecki v. Hobby Lobby Stores, Inc.* is a futile effort and tries to distract from what is obvious—Defendant has no notice of an accessibility standard because the DOJ has not offered official guidance concerning such a standard.  No. CV-17-1131-JFW(SKx), 2017 U.S. Dist. LEXIS 109123, at *10 (C.D. Cal. 2017).  *AMC* is squarely on point.

The holding in *AMC* is based on the finding that the DOJ did not provide an official interpretation of the applicable accessibility standard—in that case the line of sight requirements for auditoriums—until after some of AMC's theaters were constructed, which did not satisfy the standard.   Thus, the Ninth Circuit held that to enforce the standard against those theatres constituted a due process violation because AMC could not reasonably have known of the DOJ's interpretation of the accessibility standard. *AMC*, 549 F.3d at 767-68.  Like the Defendant in *AMC*, since the DOJ had not notified covered entities like Jo-Ann of an affirmative website accessibility standard that must be met, apart from the statutory obligation to provide auxiliary aids and services, Defendant cannot possibly know the standard.  Indeed, the result in *AMC* should follow all the more forcefully here because, unlike *AMC*, the DOJ has never provided an official interpretation of the accessibility requirement at issue.  *See Robles*, 2017 U.S. Dist. LEXIS 53133, at *17.

Further, unlike *AMC*, the DOJ was interpreting the accessibility standard required by an existing specific regulation.  *AMC*, 549 F.3d at 763.  Here, it is undisputed that there is no regulation concerning an affirmative requirement to make web content accessible, apart from the provision of auxiliary aids and services.  Plaintiff even acknowledges this fact, but cynically avers that "just because there is flexibility in figuring out how to comply with the statute, does not mean compliance is not mandated in the first instance…for due process purposes, the notice is whether Defendant knew it had to comply with the ADA and not whether it knows how it must comply with the ADA."  Pl.'s Br. in Opp'n 15, ECF No. 11.  Plaintiff's position is untenable as she is asking for Defendant to be held liable for violating a compliance standard that she admits does not exist.  In short, Defendant can hardly be faulted for not knowing the required accessibility standard for its Website, when the DOJ, still has not figured out the requirement and

"the rules by which the game will be played." *AMC*, 549 F.3d at 768. To maintain operationally feasible and legally compliant websites, businesses need – and are entitled to – a uniform set of accessibility guidelines that both put them on notice of their obligations under the law and also clearly define when compliance has been achieved.

### III. PLAINTIFF'S CLAIM THAT JO-ANN VIOLATED TITLE III BY NOT PROVIDING AUXILIARY AIDS AND SERVICES SHOULD BE DISMISSED AS A MATTER OF LAW

Even assuming Title III applies to www.joann.com, and in the absence of a specific website accessibility standard, Plaintiff is left only with the claim that Defendant violated Title III by failing to provide auxiliary aids and services in accordance with 28 C.F.R. § 36.303. *See* Compl., Count I, ¶60, ECF No. 1. This claim must also be dismissed, however, because Plaintiff does not allege that she requested auxiliary aids and services, let alone that they were denied by Defendant.

Judicial holdings considering the claims concerning the alleged failure to provide auxiliary aids and services clearly stand for the proposition that the obligation is only triggered upon a request for such aids and services by a disabled individual. *See, e.g.*, *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013) ("Both the ADA and the Rehabilitation Act are intentionally broad in scope, but they do not require institutions to provide **all requested auxiliary aids and services**. Instead, each statute requires the responsible parties to provide "necessary" auxiliary aids and services to individuals with disabilities.") (emphasis added); *see also Tauscher v. Phoenix Bd. of Realtors, Inc.*, No. CV-15-00125-PHX-SPL, 2017 U.S. Dist. LEXIS 161940, at **7-8 (D. Ariz. Sept. 29, 2017) ("Defendant met [its] obligation under the ADA **when it engaged in a dialogue with Plaintiff about his request** for an ASL interpreter so that Plaintiff could attend Defendant's classes, but was precluded from further meeting its

obligations under the ADA when Plaintiff refused to discuss alternative auxiliary aids.") (emphasis added); *Godbey v. Iredell Mem'l Hosp., Inc.*, No. 5:12-cv-00004-RLV-DSC, 2013 U.S. Dist. LEXIS 117129, at *23 (W.D.N.C. Aug. 19, 2013) ("[I]n evaluating Defendant's efforts to ensure effective communication, qualifying defendants are not required as a matter of course to provide ASL interpreters, and such **defendants are not required to guess a Plaintiff's need for reasonable accommodations**.") (emphasis added); *United States v. Harcourt Brace Legal & Prof'l Publ'n, Inc.*, No. 94CV3295, 1994 U.S. Dist. LEXIS 22007, **5-7 (N.D. Ill. June 23, 1994) (requiring the "Defendant [to] provide appropriate auxiliary aids and services to students with disabilities **who request the provision thereof** subject to [certain, enumerated conditions].") (emphasis added).

Similarly, the DOJ's Technical Assistance Manual encourages consultation between public accommodations and disabled individuals to determine which auxiliary aids or services will enable effective communication. *See Dep't of Justice: Americans with Disabilities Act ADA Title III Technical Assistance Manual*, § III-4.3100, https://www.ada.gov/taman3.html (last visited January 10, 2018) ("Public accommodations should consult with individuals with disabilities wherever possible to determine what type of auxiliary aid is needed to ensure effective communication. . . . While consultation is strongly encouraged, the ultimate decisions as to what measures to take to ensure effective communication rests in the hands of the public accommodation, provided that the method chosen results in effective communication.").

Furthermore, in many of the DOJ's "examples of auxiliary aids and services," a public accommodation's obligation to actually *provide* the aid or service is only triggered upon a disabled individuals request. *See id*. at § III-4.3300 ("[Telecommunication devices for the deaf] must be made available on request to hospital patients or hotel guests where in-room phone

13

service is provided. . . . Hospitals that provide televisions for use by patients, and hotels, motels, and other places of lodging that provide televisions in five or more guest rooms, must provide closed caption decoder service upon request.").

Moreover, in a guidance document specific to Title II of the ADA (which only applies to public entities), the DOJ stated "[g]enerally, the requirement to provide an auxiliary aid or service is triggered when a person with a disability requests it." *ADA Best Practices Tool Kit For State And Local Governments: General Effective Communication Requirements Under Title II of the ADA*, Ch. A(1), https://www.ada.gov/pcatoolkit/chap3toolkit.htm (last visited January 10, 2018). Although this guidance document applies to a different Title of the ADA, this concept should equally apply as the major differences between Titles II and III relate to the type of entity covered, not the type of access required.

For these reasons, because Plaintiff does not, nor can she, allege that she requested auxiliary aids and services from Jo-Ann, let along that they were denied, her claim that Jo-Ann violated Title III by failing to provide her with auxiliary aids and services must be dismissed.

## IV. PLAINTIFF FAILS TO REBUT DEFENDANT'S ARGUMENT THAT SHE LACKS STANDING AS SHE DID NOT SUFFER AN INJURY IN FACT

Plaintiff alleges that she sufficiently pled an "injury-in-fact" in that she "encountered an access barrier in violation of law." Pl.'s Br. in Opp'n 14, ECF No. 11. Specifically, Plaintiff's argument is premised on the assumption that the alleged access barriers interfered with her full and equal enjoyment of Defendant's goods and services. *See* Pl.'s Br. in Opp'n 15-16. Plaintiff's argument is flawed, however, in that she was not actually denied access to Defendant's goods and services. Indeed, as set forth above, Defendant's website is not a place of public accommodation under Title III. Accordingly, any alleged technical violations on Defendant's Website, if any, did not prevent Plaintiff from accessing Defendant's goods and

services at one of its retail stores.  Because Plaintiff has alleged mere technical website accessibility violations without alleging that she was actually unable to obtain Defendant's goods and services at its stores, Plaintiff lacks the concrete harm required by *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) and her Complaint should be dismissed.

## V.    PLAINTIFF HAS FAILED TO OVERCOME DEFENDANT'S ARGUMENT THAT THE CALIFORNIA STATE UNRUH CLAIM SHOULD BE DISMISSED

Plaintiff admits that her Unruh claim depends solely on establishing a Title III violation. Pl.'s Br. in Opp'n 16.  Here, because the Plaintiff's ADA claims should be dismissed for the reasons set forth above, Plaintiff's Unruh claim must also be dismissed.

Notwithstanding, even if Plaintiff's ADA claim becomes moot as Plaintiff suggests, Plaintiff's Unruh claim should still be dismissed.  While an Unruh violation can be established by proving intentional discrimination, neither the Complaint nor Plaintiff's opposition brief sufficiently allege intentional discrimination.  Plaintiff merely alleges in a conclusory fashion that Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability. *See* Pl.'s Br. in Opp'n 16; Compl. ¶ 92, ECF No. 1. Plaintiff has not, and cannot, plead with any specificity, <u>facts</u> which support her claim of intentional discrimination.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Complaint should be dismissed.

Respectfully submitted,

*s/ Stephen W. Funk, Esq.*
Stephen W. Funk (0058506)
ROETZEL & ANDRESS
222 South Main Street, Suite 400
Akron, Ohio 44114
Telephone: (330) 849-6602
Facsimile: (330) 376-4577
Email: sfunk@ralaw.com

*s/ Joseph J. Lynett*
Joseph J. Lynett (Admitted *Pro Hac Vice*)
JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
Telephone:: (914) 872-6888
Facsimile: (914) 946-1216
Email:  Joseph.Lynett@jacksonlewis.com

*Attorneys for Defendant Jo-Ann Stores, LLC*

15

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing Memorandum complies

with the 20-page limitation for dispositive motions for unassigned cases.


*/s/Stephen W. Funk, Esq.*
Stephen W. Funk, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2018, a true and accurate copy of the

foregoing was filed with the United States District Court for the Northern District of Ohio via the

Court's CM/ECF system, which will send electronic notification of such filing to the following:

Emily White (#0085662)
Marc E. Dann (#0039425)
DannLaw
PO Box 6031040
Cleveland, Ohio 44103
Telephone: (216) 373-0593
Facsimile: (216) 373-0536
E-mail: disabilitynotices@dannlaw.com

*Counsel for Plaintiff*

_/s/ Stephen W. Funk_____
Stephen W. Funk, Esq.

17