IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


REBECCA CASTILLO,              )       CASE NO. 5:17CV2110
                             )

                    Plaintiff,     )

                    v.         )       MAGISTRATE JUDGE
                             )       KATHLEEN B. BURKE

JO-ANN STORES, LLC,      )

                             )       **CORRECTED**
                    Defendant.    )       **MEMORANDUM OPINION & ORDER**
                             )

This case is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint ("the Motion"). Doc. 10. The principal question raised by the Motion is when, if ever, a retailer's website that is inaccessible to visually impaired persons may be the subject of a lawsuit by such a person under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

The Motion, filed by Defendant Jo-Ann Stores, LLC ("Jo-Ann"), contends that the Complaint filed by Plaintiff Rebecca Castillo ("Castillo") fails to state a claim upon which relief can be granted under the ADA for two reasons: (1) the ADA may not be applied to websites at all; and (2) in the alternative, Castillo has failed to allege to the extent required that her inability to access Jo-Ann's website acted as a barrier to her obtaining goods and services at Jo-Ann's physical store locations.[1] Castillo has filed an opposition brief (Doc. 11) and Jo-Ann has replied (Doc. 12). For the reasons set forth below, the Court concludes that Castillo's Complaint states a

---

[1] Jo-Ann also asserts that Castillo lacks standing to sue; that the injunctive relief she seeks would violate Jo-Ann's due process rights; and that the Complaint's failure to state a claim under the ADA dooms Castillo's state law claim under California's Unruh Civil Rights Act ("UCRA").

claim under Title III of the ADA because it sufficiently alleges a nexus between the website and Jo-Ann's physical locations.

## I. Allegations of the Complaint[2]

Plaintiff Rebecca Castillo ("Castillo"), a resident of California, is a blind and visually impaired person who requires screen-reading software to read website content. Complaint, Doc. 1, pp. 1, 3, ¶¶1 and 10. Defendant Jo-Ann Stores, LLC ("Jo-Ann") is a specialty retailer of crafts and fabrics that is headquartered in the Northern District of Ohio. Doc. 1, p. 3, ¶¶11 and 12. Consumers may purchase products from Jo-Ann in person at its brick-and-mortar stores or online through Jo-Ann's website, www.joann.com. Id. Castillo alleges that Jo-Ann has failed to make its website accessible to blind or visually impaired individuals and that such failure discriminates against her and other blind or visually impaired individuals in violation of Title III of the ADA and California's Unruh Civil Rights Act ("UCRA"). Doc. 1, pp. 13-16. She seeks a declaratory judgment that Jo-Ann violated both Title III of the ADA and UCRA, preliminary and permanent injunctions prohibiting Jo-Ann from further violations, compensatory damages, and attorney fees and expenses. Doc. 1, p. 17.

Castillo alleges that screen-reading software such as the software she uses[3] works only if the information on a website is capable of being rendered into meaningful text. If not, the blind or visually-impaired user cannot access the website content that is available to sighted users. Doc. 1, p. 4, ¶18. Currently, screen-reading software is the only method a blind or visually-

---

[2] On a Motion to Dismiss, the Court must accept as true the facts alleged in the Complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the facts set forth herein are taken from Castillo's Complaint, Doc. 1.

[3] Castillo uses Job Access With Speech ("JAWS"), which, she states, "is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer." Doc. 1, p. 4, ¶¶16-17.

impaired person can use to independently access the internet, websites and other digital content. Doc. 1, p. 4, ¶19.

Jo-Ann's website, www.joann.com, offers customers the following: a physical store locator feature; information about sales; offers and discounts (both in-store and online); the ability to browse product selections and to find product information; and the ability to make purchases. Doc. 1, pp. 3, 7-8, ¶¶12, 28. Jo-Ann's website is not capable of being rendered into meaningful text, i.e., a person cannot access the above-cited services on www.joann.com using screen-reading software. Doc. 1, pp. 8-9, ¶37. Castillo alleges that she has attempted unsuccessfully to access www.joann.com using screen reading software. Doc. 1, p. 8, ¶33. She alleges that she was unable to complete an online transaction before the website timed out, and she was unable to access graphics and links on the website. Doc. 1, pp. 9-10, ¶¶37, 38.

Castillo makes several allegations with respect to the effect of the website's inaccessibility on her ability to access Jo-Ann's brick-and-mortar stores: she alleges that she was unable to use the store locator feature on the website to locate a physical store (Doc. 1, p. 9, ¶37(b)); that the access barriers she has encountered on www.joann.com have deterred her from visiting or locating Jo-Ann's brick and mortar stores (Doc. 1, pp. 8, 10, ¶¶36, 43); and that visually impaired persons cannot learn about in-store and online sales, offers and discounts, or schedule shipment or in-store pickup of purchases (Doc. 1, p. 13, ¶51).

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations of a pleading must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id.* "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677 (quoting Fed. R. Civ. P. 8(a)(2)). A defendant is entitled to "fair notice of what the . . . claim is and the ground upon which it rests." *Twombly*, 550 U.S. at 570 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While great detail is not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 924–25 (N.D. Ohio 2009) (citing and relying on *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) and *Erickson v. Pardus*, 551 U.S. 89 (2007) for the proposition that specific facts are not necessary)).

## III. Analysis

### A. Castillo has standing to bring her lawsuit

To have standing to sue, a plaintiff must allege (1) an injury in fact that is concrete and particularized, actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Jo-Ann argues that Castillo has failed to allege that she suffered an injury in fact necessary to establish standing to bring her lawsuit. Doc. 10, p. 19 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)). Specifically, Jo-Ann contends that, at most, Castillo's Complaint contains allegations of "mere technical" violations of Title III "without alleging that she was actually unable to obtain Defendant's goods and services at its stores" and, therefore, she does not meet the "more rigorous" articulation of "concrete harm" required by *Spokeo*. Doc. 10, p. 20. Castillo asserts that she has experienced and pleaded an injury in fact caused by Jo-Ann's conduct. Doc. 11, p. 15.

In *Spokeo*, the plaintiff alleged that a website operator violated the Fair Credit Reporting Act when it published inaccurate information about him. 136 S.Ct. at 1544. The Supreme Court remanded the case because the Ninth Circuit had not discussed whether the plaintiff's injury was "concrete," i.e., whether the publication of the inaccurate information harmed him. *Id.* at 1550. The Court observed that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* at 1549.

Here, Castillo does not allege only that Jo-Ann committed "mere technical violations" of Title III. She also alleges that she tried unsuccessfully to locate Jo-Ann's brick and mortar stores and access goods and services and information about sales and promotions on Jo-Ann's website. She alleges further that she could not do so because Jo-Ann's website was not accessible to her, a person with a disability; and that she suffered harm as a result. She alleges that the

inaccessibility of the website to her and other visually impaired persons constitutes a violation of

Title III of the ADA, which provides that no individual shall be discriminated against on the

basis of their disability in the full and equal enjoyment of goods and services of a place of public

accommodation.  See, e.g., Doc. 1, pp. 8-10, ¶¶31-40.  Castillo thus has alleged an injury in fact

that is concrete.  Therefore, she has standing to sue.

**B.  Castillo has stated a claim cognizable under Title III of the ADA**

Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal
> enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of
> any place of public accommodation by any person who owns, leases (or leases to), or
> operates a place of public accommodation.

42 U.S.C. § 12182(a).

In 42 U.S.C. § 12181(7), the ADA lists 12 "private entities [that] are considered public

accommodations for purposes of this subchapter, if the operations of such entities affect

commerce," including

> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales
> or rental establishment;

§ 12181(7)(E).[4]

The legislative history of the ADA instructs that the twelve categories "should be

construed liberally to afford people with disabilities equal access to the wide variety of

establishments available to the nondisabled."  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 677

(2001) (internal quotation marks omitted).

The parties dispute whether Jo-Ann's website is a "place of public accommodation" or

has a sufficient nexus to a place of public accommodation to be covered under Title III of the

---

[4]  Other categories include a laundromat, ... travel service, ... or other service establishment."  *See* 42 U.S.C. §
12181(7).

ADA.  Jo-Ann declares, in the first argument heading in its opening brief, "The Sixth Circuit has held en banc that the ADA does not apply to websites and, even if it did, there is no nexus between Jo-Ann Stores' website and barriers to access in a physical location."  Doc. 10, p. 8.  The *en banc* decision referred to is *Parker v. Metro. Life Ins. Co*., 121 F.3d 1006 (6th Cir. 1997).  Jo-Ann also relies on an earlier Sixth Circuit case cited in *Parker, Stoutenborough v. National Football League, Inc*., 59 F.3d 580 (6th Cir. 1995).  Jo-Ann asserts that, in both cases, the Sixth Circuit held that a public accommodation under Title III "is a physical place."  Doc. 10, pp. 9-11.  Therefore, Jo-Ann reasons, Title III does not apply to its website (or any website) because a website is not a "physical place."  Id.

### 1. The Sixth Circuit's decisions in *Parker* and *Stoutenborough* do not foreclose Castillo's ADA claim

Neither *Parker* nor *Stoutenborough* involved a website, as Jo-Ann concedes in its reply brief.  Doc. 12, p. 8.  Moreover, while Jo-Ann contends that *Parker* and *Stoutenborough* are "factually indistinguishable" from this case (Doc. 12, p. 5),[5] the facts set forth in the two Sixth Circuit opinions, which are summarized below, belie that assertion.  The holdings in *Parker* and *Stoutenborough* are each based on their own facts and, while they provide some guidance, they leave for later decisions the application of the ADA to facts such as those presented in this case, as the majority in *Parker* expressly acknowledged.

### a. *Parker*

In *Parker*, the Sixth Circuit affirmed a district court's summary judgment entered in favor of an employer and its insurance carrier, holding that the terms of a long-term disability plan provided by the employer and administered by the insurer did not fall within the purview of Title

---

[5]  Although Jo-Ann argues that this case is "factually indistinguishable" from both *Parker* and *Stoutenborough*, it also, inconsistently, characterizes *Stoutenborough* as "a vastly different factual situation" from *Parker*.  Doc. 12, p. 6.

III. 121 F.3d at 1014. The plaintiff employee became disabled and her payments were

terminated by her employer because her disability was not covered under the plan. *Id*. She sued

MetLife and her employer alleging, among other claims, a violation of Title III of the ADA.[6] *Id*.

The district court held that Met Life was not a proper defendant under Title III "because Title III

only covers discrimination in the physical access to goods and services, not discrimination in the

terms of insurance policies." *Id*. On appeal, a panel of the Sixth Circuit reversed the district

court's Title III ruling, finding that the insurance policy is covered by Title III because

"insurance products are 'goods' or 'services' provided by a 'person' who owns a 'public

accommodation.'" *Id*. at 1009 (quoting *Parker v. Metro. Life Ins. Co*., 99 F.3d 181, 188 (6th Cir.

1996)).

The Sixth Circuit agreed to rehear the case *en banc* and, in its *en banc* ruling, affirmed

the district court's judgment for the defendants. *Id*. The Court explained that, although an

insurance office is a place of public accommodation, the "plaintiff did not seek the goods and

services of an insurance office" but "accessed a benefit plan provided by her private employer."

*Id*. at 1010. The Court concluded both that "a benefit plan offered by an employer is not a good

offered by a place of public accommodation" (*id*. at 1010-1011) and that "Title III does not

govern the content of a long-term disability policy offered by an employer." *Id*. at 1012.

In reaching its holding, the Sixth Circuit's *en banc* majority stated, "As is evident by §

12187(7), a public accommodation is a physical place and this Court has previously so held."

121 F. 3d at 1010-1011, citing *Stoutenborough*. It is this language that is the basis for Jo-Ann's

contention that *Parker* is an absolute bar to any claim under Title III of the ADA pertaining to a

website. But *Parker* itself contradicts Jo-Ann's position. Indeed, the *Parker* majority expressly

left open the question to be decided in this case. After noting that "the good that plaintiff seeks

---

[6] The plaintiff also brought an ADA Title I claim, which covers employment discrimination, against her employer.

[the employer-provided policy] is not offered by a place of public accommodation" because "[t]he public cannot enter the office of MetLife or [plaintiff's employer] and obtain the long-term disability policy that plaintiff obtained" (*id.* at 1011),[7] the *Parker* majority responded in a footnote to a dissenting opinion by Judge Merritt, making clear that its holding did not reach the question presented here:

> Judge Merritt's dissent suggests that our opinion concludes that Parker's disability plan obtained through her employer is not covered by Title III because she physically did not access her policy from MetLife's insurance office. We have not so held. The policy Parker obtained is not covered by Title III because Title III covers only physical places. *We have expressed no opinion as to whether a plaintiff must physically enter a public accommodation to bring suit under Title III as opposed to merely accessing, by some other means, a service or good provided by a public accommodation*.

121 F.3d at 1011, n. 3 (emphasis supplied).

Jo-Ann relies on then Chief Judge Martin's dissenting opinion to support its argument that *Parker* "serves to exclude websites from coverage" under Title III of the ADA. Judge Martin expressed concern that the majority's opinion might be used to deprive disabled individuals of the protections of the ADA with respect to the "increase[ing] percentage of goods and services available through a marketplace that does not consist of physical structures. . . ." 121 F.3d at 1020 (Martin, C.J., dissenting), quoted in Doc. 10, p. 10. The concern stated by Judge Martin in dissent does not override the majority's statement, quoted above, that expressly left open the issue raised by this case.

Thus, *Parker* by its own terms does not hold that a plaintiff must physically enter a place of public accommodation in order to state a claim under Title III of the ADA. Here, Jo-Ann undisputedly owns and operates places of public accommodation, i.e., its brick-and-mortar stores, and Castillo sought access to goods and/or services offered to the public by Jo-Ann at its

---

[7]  The *Parker* Court also remarked that Title IV of the ADA, 42 U.S.C. § 12201, includes a provision regarding insurance policies.  121 F.3d at 1012-1013 (citing § 12201(c)).

places of public accommodation by a means other than physically entering one of the stores, i.e., through Jo-Ann's website. Accordingly, *Parker* does not foreclose Castillo's Title III claim.

### b. *Stoutenborough*

In *Stoutenborough*, a group of hearing-impaired plaintiffs sued the National Football League (NFL), a football team and a number of broadcasting companies under Title III of the ADA, alleging that the NFL's "blackout rule" discriminated against the hearing impaired. 59 F.3d at 581. The "blackout rule" prohibited local broadcasters from televising home football games if the games had not been sold out. *Id*. at 582. The plaintiffs alleged that the "blackout rule" was discriminatory because they had no other way to access the game; for instance, they could not listen to it on the radio because of their hearing impairment. *Id*.

The Court of Appeals affirmed the lower court's decision granting the defendants' motion to dismiss for failure to state a claim. It explained first, that the "blackout rule" was not discriminatory because it affected both hearing-abled and hearing-impaired alike, i.e., neither could watch the games on television. *Id*. Next, it found that none of the defendants was a place of public accommodation and the "service" that the plaintiff sought, the television broadcast, "does not involve a place of public accommodation." *Id*. at 583. Finally, the Court observed that there were two statutes relevant to televised broadcasts that did not indicate an intent by Congress to include the "blackout rule" within the purview of the ADA. *Id*. (citing the Communications Act of 1934 and the Television Decoder Circuitry Act of 1990).

The facts in *Stoutenborough* are very different from the facts in this case. First, the plaintiffs in *Stoutenborough* did not show that the service they complained of discriminated against them vis-a-vis non-disabled persons. Castillo, however, alleges that Jo-Ann's website is discriminatory because visually-impaired people cannot access it but visually-abled people can. Next, it is undisputed that Jo-Ann owns and operates places of public accommodation, i.e., its

brick-and-mortar stores.  In contrast, none of the defendants in *Stoutenborough* were places of public accommodation.  The broadcast service in *Stoutenborough* was held to not involve a place of public accommodation.  Finally, unlike the defendants in *Stoutenborough*, Jo-Ann does not identify a federal statute relevant to this case that indicates a legislative intent that the ADA not apply to Jo-Ann's website.

Thus, *Stoutenborough* does not foreclose Castillo's Title ADA claim.

### 2. Castillo has alleged a nexus between Jo-Ann's website and its physical stores that is sufficient to state a claim

Jo-Ann argues in the alternative that, even if Title III does not completely bar claims pertaining to websites, Castillo is required to allege a "strong" nexus between Jo-Ann's inaccessible website and its physical places of public accommodation, i.e., its brick-and-mortar stores.  Doc. 10, p. 11.  It contends that Castillo cannot show a strong nexus because she does not allege that the website "impeded or prevented" her from entering a Jo-Ann store.  Doc. 10, p. 12. In her Opposition, Castillo argues that there is a clear nexus between the barriers she encountered on the website and Jo-Ann's physical locations: among other things, the website contained an inaccessible store locator feature that "deterred" her from locating and visiting a physical store. Doc. 11, p. 11.  She also alleges that she was unable to make purchases and have products shipped from the store to her home and that Jo-Ann could not "effectively communicate information about products and goods offered for sale in physical locations."  Doc. 11, pp. 11-12. Allegations consistent with these assertions are contained in Castillo's Complaint.  See Doc. 1, pp. 8-10, ¶¶28, 34-37.

The circuits are split as to whether a plaintiff alleging a Title III violation relating to a website has to show a nexus between the website and a physical location.  *See, e.g., Gil v. Winn Dixie Stores*, 242 F.Supp.3d 1315, 1318-1320 (S.D.Fla. March 15, 2017) (collecting cases and

observing that the First, Second and Seventh Circuits have held that the ADA applies to websites regardless whether there is a connection with a physical space whereas the Third, Sixth (citing *Parker*), Ninth and Eleventh Circuits have concluded that, in order to state a claim, a complaint must allege a sufficient nexus between a website and a physical space).

Jo-Ann relies on four cases decided by courts within the Eleventh and Ninth Circuits in support of its argument that Castillo has failed to allege a "strong" nexus: *Access Now v. Southwest Airlines*, 227 F. Supp. 2d 1312, 1316 (S.D. Fla. 2002); *Rendon v. Valleycrest Prods.*, 294 F.3d 1279, 1285-86 (11th Cir. 2002); *Gomez v. Bang & Olufsen Am., Inc.*, 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017); and *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 949 (N.D. Cal. 2006).

In *Access Now v. Southwest Airlines*, 227 F. Supp. 2d 1312, 1316 (S.D. Fla. 2002), visually impaired plaintiffs alleged that Southwest Airlines' website was inaccessible to them because it did not permit them to use their screen reading programs, thereby discriminating against them.  In the district court, plaintiffs alleged and argued that the website itself was a place of public accommodation.  The district court held that Southwest Airlines' website was not a place of public accommodation or a means to access a physical space.  *Id*. at 1319-1320.  On appeal, the plaintiffs abandoned the argument that the website itself was a public accommodation, arguing instead that Southwest Airlines was a "travel service," one of the 12 categories of  public accommodation listed in the ADA statute, and that its website was connected to the travel service.  *Id*.  The Eleventh Circuit dismissed the appeal.[8]  It declined to consider plaintiffs' new legal theory that was based on facts that had not been alleged in the complaint nor argued before the district court.  *Access Now v. Southwest Airlines*, 385 F.3d 1324, 1329 (11th Cir. 2004).  Because the plaintiffs had abandoned the argument they had made before

---

[8]  In its brief, Jo-Ann incorrectly claims that the Eleventh Circuit affirmed the district court.   Doc. 10, p. 11.

the district court, the Eleventh Circuit also declined to review the district court's ruling. *Id*. at

1330. The court of appeals noted that the new issue the plaintiffs presented on appeal was

"[p]lainly ... not an easy question" and that circuits were split on the issue; it also mentioned that

airlines such as Southwest are generally not covered by Title III of the ADA. *Id*. at 1331, 1334.

Thus, the Eleventh Circuit did not address the merits of either theory advanced by the plaintiffs.

In *Rendon v. Valleycrest Prods*., 294 F.3d 1279, 1285-86 (11th Cir. 2002), the Eleventh

Circuit found that the plaintiffs had stated a claim under Title III of the ADA when they alleged

that the television program "Who Wants To Be A Millionaire" discriminated against them in the

way it operated its automated contestant hotline. 294 F.3d at 1280. The plaintiffs had audio or

upper body impairments and they could either not hear the hotline's automated questions or key

in their answers quickly enough on their telephone keypads to transmit their answers. *Id*. at

1280-1281. The defendant television program conceded, and the court agreed, that the show

took place in a studio, a place of public accommodation, and that the automated telephone

system screened out many disabled people, i.e., it was discriminatory. *Id*. at 1283. The

defendant argued that "the Millionaire contestant hotline may not serve as the basis for a Title III

claim because it is not itself a public accommodation or a physical barrier to entry erected at a

public accommodation." *Id*. The Eleventh Circuit disagreed:

> We find this argument entirely unpersuasive. A reading of the plain and unambiguous[]
> statutory language at issue reveals that the definition of discrimination provided in Title
> III covers both tangible barriers, that is, physical and architectural barriers that would
> prevent a disabled person from entering an accommodation's facilities and accessing its
> goods, services and privileges, *see* 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible
> barriers, such as eligibility requirements and screening rules or discriminatory policies
> and procedures that restrict a disabled person's ability to enjoy the defendant entity's
> goods, services and privileges, *see* 42 U.S.C. § 12182(b)(2)(A)(i)-(ii).[] There is nothing
> in the text of the statute to suggest that discrimination via an imposition of screening or
> eligibility requirements must occur on site to offend the ADA.

*Id*. at 1283-1284 (footnote omitted).

*Rendon* undercuts, rather than supports, Jo-Ann's argument that Castillo's Complaint is deficient because it only "alleges that Plaintiff purportedly was deterred from visiting a retail store because she allegedly could not locate such stores on the Website" and fails to allege "that she was denied access to any of Defendant's retail locations . . . ." Doc. 10, p. 13. The *Rendon* court rejected the argument that the complained-of barrier to access must be located on-site at a physical location. As observed in *Gil v. Winn Dixie Stores, Inc.,* 242 F. Supp. 3d 1315 (S.D.Fla. 2017), *Rendon* held that the plaintiffs stated a claim because they alleged the automated system was inaccessible to them and thus "denied them access to a privilege (competing in the television show) offered by a public accommodation (the television studio)." 242 F.Supp.3d at 1319-1320 (citing *Rendon*, 294 F.3d at 1284–1286).

Finally, in *Gomez v. Bang & Olufsen Am., Inc*., 2017 WL 1957182 (S.D.Fla. Feb. 2, 2017), a visually impaired plaintiff sued a retail store alleging that he could not access the store's website because it was not compatible with his screen reading software. The court found that, because the plaintiff only alleged that he planned to order goods online, he did not state a Title III claim. *Id*. at *4.

The case law from the Eleventh Circuit actually supports Castillo's position that she has alleged a sufficient nexus to proceed on her Title III claim. This is made clear by *Gil v. Winn Dixie*, *supra*, a 2017 case factually similar to this one. In *Gil*, the district court held that a legally blind plaintiff using screen reader software to access a retail store's website sufficiently alleged a nexus between the retailer's website and its physical store where the website allowed customers to locate physical stores and fill and refill prescriptions for in-store pick-up or delivery and the court found that the "website is heavily integrated with, and in many ways operates as a gateway to, Winn–Dixie's physical store locations."

The Ninth Circuit district court case cited by Jo-Ann, *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946 (N.D. Cal. 2006), is also very similar to this case and also supports Castillo's position. The blind plaintiffs in that case alleged that the website operated by Target, a retailer, was not compatible with the interactive software they used to access websites. *Id*. at 949. The court rejected Target's argument that the plaintiffs' allegations could only survive if they could show they were physically denied access on-site to one of Target's brick-and-mortar stores or the goods contained therein. *Id*. at 951-954. It rejected Target's argument that plaintiffs' claims failed because the alleged inaccessibility happened off-site from the place of public accommodation. *Id*. at 953. The court explained:

> The case law does not support defendant's attempt to draw a false dichotomy between those services which impede physical access to a public accommodation and those merely offered by the facility. Such an interpretation would effectively limit the scope of Title III to the provision of ramps, elevators and other aids that operate to remove physical barriers to entry. Although the Ninth Circuit has determined that a place of public accommodation is a physical space, the court finds unconvincing defendant's attempt to bootstrap the definition of accessibility to this determination, effectively reading out of the ADA the broader provisions enacted by Congress. . . . [I]n the present action, plaintiffs have alleged that the inaccessibility of Target.com denies the blind the ability to enjoy the services of Target stores. The Ninth Circuit has stated that the "ordinary meaning" of the ADA's prohibition against "discrimination in the enjoyment of goods, services, facilities or privileges, is 'that *whatever* goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services.'" *Weyer*, 198 F.3d at 1115 (emphasis added). Defendant's argument is unpersuasive and the court declines to dismiss the action for failure to allege a denial of physical access to the Target stores.

*Id*. at 955. The court concluded, "[T]o the extent that plaintiffs allege that the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in Target stores, the plaintiffs state a claim, and the motion to dismiss is denied"; to the extent the website "offers information and services unconnected to Target stores, which do not affect the enjoyment of goods and services offered in Target stores, the plaintiffs fail to state a claim under Title III of the ADA." *Id*. The court cautioned that further discovery may reveal that the ADA would have

a broader reach than at the early motion to dismiss stage if, as it appeared, Target treated its website as an extension of its stores such that they are an "integrated effort." *Id.*, n. 4.

The Court finds *Gil* and *Nat'l Fed'n of the Blind* to be on-point, legally and factually, with this case. Moreover, there is no inconsistency between those cases and the Sixth Circuit's decision in *Parker* because *Parker* expressly left open the question "whether a plaintiff must physically enter a public accommodation to bring suit under Title III as opposed to merely accessing, by some other means, a service or good provided by a public accommodation." *Parker*, 121 F.3d at 1011, n.3.

Castillo's Complaint contains the following factual allegations similar to the allegations held sufficient to state a claim in those cases:

> 28. The goods and services offered by Defendant's website include, but are not limited to the following: find store locations; learn about sales, offers and discounts (both in-store and online); the ability to browse product selections and to find product information; and make purchases.
>
> \*       \*       \*
>
> 36. Similarly, the access barriers Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting or locating brick-and-mortar stores selling Defendant's products.
>
> 37. While attempting to navigate Joann.com, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to:
>
> > b. Plaintiff encountered links and buttons that are inactive or otherwise not accessible by keyboard. Plaintiff visited Defendant's website to shop for craft supplies and to locate a store; however, she encountered cursor traps that rendered the site inaccessible via screen-reader, unlabeled links that stymied her search, and forms that were unintelligible such that she could not place an order.

Doc. 1, pp. 7-10, ¶¶28, 36, 37.

Castillo has sufficiently alleged a nexus between Jo-Ann's website and its brick-and-mortar stores. Therefore, the Court need not determine whether Jo-Ann's website is itself a place of public accommodation. *See Gil*, 242 F.Supp.3d at 1321 (declining to decide whether the

defendant's website itself was a place of public accommodation because the plaintiff has sufficiently alleged a nexus between the defendant's website and its brick-and-mortar stores).

**3. The relief sought by Castillo does not violate Jo-Ann's due process rights**

Jo-Ann's first argument with respect to the relief sought in Castillo's Complaint is that Title III does not provide for declaratory relief, only injunctive relief. Doc. 10, p. 15. Jo-Ann cites 42 U.S.C. § 12188(a)(2) in support and asks the Court to strike the portion of Castillo's complaint that requests declaratory relief. Id. Castillo does not respond to this argument in her opposition brief. Accordingly, the Court will strike the portion of the Prayer for Relief in Castillo's Complaint that requests declaratory relief.

Jo-Ann next argues that the injunctive relief Castillo seeks is "completely improper, and amounts to a due process violation." Doc. 10, p. 14. It complains that the ADA "provides no notice whatsoever to companies on how to comply with the ADA in the website context and what standards they should adopt." Id. Accordingly, it submits, the requirement for website access that Castillo seeks to impose in this lawsuit "simply does not exist." Doc. 10, p. 17. Castillo submits that due process does not require the ADA to provide detailed guidelines, Doc. 11, pp. 12-13 (citing 42 U.S.C. § 12206(e)), and that the proper query for due process is whether a defendant knew it had to comply with the ADA, not whether it knows how to comply. Doc. 11, p. 15.

Section § 12206(e) provides,

An employer, public accommodation, or other entity covered under this chapter shall not be excused from compliance with the requirements of this chapter because of any failure to receive technical assistance under this section, including any failure in the development or dissemination of any technical assistance manual authorized by this section.

In support of its argument that it should not have to comply because there are no guidelines in place telling it how to, Jo-Ann relies on *Robles v. Domino's Pizza*, 2017 WL

1330216 (C.D.Cal. Mar. 20, 2017). Doc. 10, p. 18. But in *Robles*, unlike this case, the plaintiff

had specifically alleged that the defendant's website was incompatible with "version 2.0 of

W3C's Web Content Accessibility Guidelines ('WCAG 2.0')" and sought to require the

defendant comply with WCAG 2.0. *Id*. at *1. In other words, the plaintiff requested that the

court order the defendant to adopt a specific standard for web accessibility. In denying the

plaintiff relief, the *Robles* court remarked,

> The DOJ ... noted, however, that until the process of establishing specific technical
> requirements for a particular technology is complete, "public accommodations have a
> degree of flexibility in complying with title III's more general requirements of
> nondiscrimination and effective communication—but they still must comply." (RJN, Ex.
> A at 8–9 [emphasis added].) Plaintiff has failed to articulate why either Defendant's
> provision of a telephone hotline for the visually impaired or it[]s compliance with a
> technical standard other than WCAG 2.0 does not fall within the range of permissible
> options afforded under the ADA.

2017 WL 1330216 at *5-6.

Here, Jo-Ann apparently has not adopted any form of compliance standard and Castillo's

Complaint does not seek to impose any specific technical requirements on Jo-Ann. Castillo's

Prayer for Relief seeks the following injunctive relief:

> A preliminary and permanent injunction enjoining Defendant from
> further violations of the ADA, 42 U.S.C. § 12181 *et seq*., with
> respect to its website, Joann.com

Doc. 1, p. 17.[9]

Thus, Castillo is simply seeking to require Jo-Ann to comply with Title III of the ADA.

Unlike the plaintiff in *Robles*, she is not attempting to dictate how Jo-Ann should comply. As

succinctly described by another court, Jo-Ann's argument advanced here:

> ...puts the cart before the horse, and fundamentally misconstrues Plaintiff's Complaint.
> The Complaint does not mention the Web Content Accessibility Guidelines once. Nor
> does the Complaint allege that CVS otherwise violated the ADA by failing to meet any
> other extra-governmental set of guidelines. Rather, the Complaint alleges that, as
> currently built, CVS'[s] website and mobile app are inaccessible to people with visual

---

[9] Castillo seeks the identical injunctive relief with respect to the Unruh Act.

18

impairments because it is not compatible with two of the most common screen reading software programs available. Therefore, whether or not CVS's digital offerings must comply with the Web Content Accessibility Guidelines, or any other set of noncompulsory guidelines, is a question of remedy, not liability. C.*f., Target Corp*., 452 F. Supp. 2d at 956 (evaluating whether a website containing a phone number for people with visual impairments to call upon accessing the website was sufficient under the ADA, and concluding that "the flexibility to provide reasonable accommodation is an affirmative defense and not an appropriate basis upon which to dismiss the action").

*Reed v. CVS Pharmacy*, 2017 WL 4457508, *4 (C.D.Cal. Oct. 3, 2017); *see also Rios v. New York & Company*, 2017 WL 5564550, *6 (C.D.Cal. Nov. 16, 2017) (rejecting the defendant's due process argument, stating, "Plaintiff has not requested an injunction requiring Defendant to comply with the WCAG guidelines; rather, Plaintiff states that websites that adhere to WCAG's recommendations are accessible for blind individuals."); *Gorecki v. Hobby Lobby Stores, Inc*., 2017 WL 2957736, at *7 (C.D.Cal. June 15, 2017) (same).

Jo-Ann's additional arguments regarding the scope of a potential injunction (Doc. 12, p. 12) are premature. Its reliance upon *United States v. AMC Entm't, Inc*., 549 F.3d 760 (9th Cir. 2008), is misplaced. In *AMC*, the DOJ had issued guidelines in 1991 for wheelchair seating in assembly areas and stated that the seating should have "lines of sight comparable to those for members of the general public." *Id*. at 763 (quoting 28 C.F.R. pt. 36, app. A, § 4.33.3). During the ensuing years, there was considerable disagreement among circuit courts about what, exactly, constituted "lines of sight comparable to those for members of the general public." *Id*. at 764-767 (discussing the various circuit court interpretations). The DOJ sued AMC for non-compliance with § 4.33.3; the district court adopted the Ninth Circuit's "lines of sight" interpretation and granted summary judgment in favor of the DOJ; and the court ordered AMC to retrofit all its 96 theaters containing a total of 1,993 stadium-style auditoria to comply with § 4.33.3. *Id*. at 767-768. The Ninth Circuit reversed and remanded the case to the district court to

determine the specific date that AMC could have "fairly discerned the settled meaning" of §

4.33.3.  The Ninth Circuit explained:

> Retroactive application of the viewing angle interpretation is appropriate
> only as of the date on which AMC received constructive notice that the
> government viewed § 4.33.3 as incorporating a comparable viewing
> angles requirement and intended to enforce that requirement.

*Id.* at 768-769.

Thus, *AMC* arose in a much different procedural and factual context than this case and

does not support Jo-Ann's assertion that Castillo's Complaint should be dismissed.  *See also*

*Gorecki*, 2017 WL 2957736, at *6 (explaining that the *AMC* court reviewed whether a district

court's comprehensive remedial plan was appropriate after granting the DOJ summary judgment

and not in a ruling on a motion to dismiss);[10] *see also Andrews v. Blick Art Materials*, LLC, 268

F.Supp.3d 381, 404 (E.D.N.Y. 2017) (rejecting the defendant's motion to dismiss ADA claim on

due process grounds; "Defendant's concerns about potential modifications and remedies are not

ripe for resolution at this stage of the litigation.")

Finally, in its reply brief, Jo-Ann argues, for the first time, that Castillo's claim that it did

not provide auxiliary aids and services fails as a matter of law.  Doc. 12, pp. 16-18 (citing Doc.

1, p. 14, ¶60).  Jo-Ann did not make this argument in its opening brief; accordingly, the Court

will not consider it.[11]  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)

(issues raised for the first time in replies to responses are waived).

### C.  Castillo's claim under the Unruh Civil Rights Act, California Civil Code § 51

---

[10]  In *AMC*, the DOJ had promulgated specific regulations that were found to be ambiguous, whereas here, the DOJ
has not promulgated specific regulations.  *See AMC*, 549 F.3d at 763-764; Doc. 10, pp. 14-15 (Jo-Ann's brief stating
that the DOJ has not promulgated specific regulations).

[11]  Moreover, the court in *Nat'l Fed'n of the Blind v. Target Corp.* observed that Target's argument based on the
"auxiliary aid provision of Title III," 42 U.S.C. § 12182(a)(2)(A)(iii), was an affirmative defense; it had been raised
prematurely; and it was not a basis for dismissing the complaint. 452 F.Supp.2d at 956.

Jo-Ann argues that Castillo's California State law claim based on the Unruh Act fails because it is available, as pleaded, only if Castillo has stated a claim under Title III of the ADA. Doc. 10, pp. 20-21.  As explained above, Castillo's Title III claim is a viable claim. Accordingly, Castillo's claim under the Unruh Act also survives Jo-Ann's motion to dismiss.

## IV. Conclusion

For the reasons stated above, Jo-Ann's Motion to Dismiss (Doc. 10) is **DENIED**. Plaintiff's prayer for declaratory relief is stricken from the Complaint.

IT IS SO ORDERED.

Dated:  February 13, 2018

Kathleen B. Burke
United States Magistrate Judge